500 So.2d 385 (1987)
STATE of Louisiana
v.
Kerry L. SHOEMAKER.
No. 86-K-1083.
Supreme Court of Louisiana.
January 12, 1987.
*386 Lavalle Salomon, Davenport, Files & Kelly, Monroe, for applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William R. Coenen, *387 Dist. Atty., Terry A. Doughty, Asst. Dist. Atty., for respondent.
DIXON, Chief Justice.
Kerry Shoemaker was charged by separate bills of information with two counts of distribution of marijuana in violation of R.S. 40:966. Tried by a jury and convicted on both counts, he was sentenced to three years at hard labor on each count, with the sentences to run concurrently. The sentences were suspended and a term of five years supervised probation with specified conditions was imposed as well as a $1500 fine plus court costs on each count.
Shoemaker's convictions were affirmed by the court of appeal in a split decision. The appeal court found that the exclusion of defendant's ex-wife as a defense witness was "constitutionally impermissible" but, nevertheless, "harmless." Additionally, the majority found error (albeit tacitly) in restricting defendant's testimony where it noted that his testimony was admissible under an exception to the hearsay rule. It failed to reach the merits of contentions that defendant was prevented from presenting a defense, however, because it concluded that the issue was waived for counsel's failure to make a proper objection. State v. Shoemaker, 488 So.2d 1084 (La.App. 2d Cir.1986).
The defendant was charged with distributing marijuana on two occasions to the same undercover officer, Deputy Irene Sargent. Sargent, who was the state's principal witness, was a newly hired deputy with the Richland Parish Sheriff's Department. Her primary qualification for the job had been that she once owned a bar. Deputy Sargent's assignment called for her to go to designated locations and, if the opportunity arose, to discuss the possibility of purchasing whatever drug was discussed. One such location was the Melody Lounge. She was furnished with the names of three suspected drug dealers, one of which was Shoemaker, and went to the Melody on October 15, 1983 pursuant to her instructions. On that night she met defendant, and he gave her a small amount of marijuana. This occurred again on October 19, 1983. On each occasion, defendant refused any payment. The total amount of marijuana involved was about one-half of one ounce.
In his first assignment of error, defendant contends that the trial court erred in prohibiting him from testifying as to res gestae conversations between him and Deputy Sargent before, during and after the alleged transactions.
The only witnesses to the first transaction were the defendant and Deputy Sargent. A state trooper, John Ballance, was present at the second transaction. He testified that he witnessed the defendant place a plastic bag in Sargent's purse, but he did not actually hear any conversations between Sargent and the defendant. On this occasion, as on the first occasion, no money changed hands, and the only two individuals who knew of the discussions and the motivation for the transfers of the bags of marijuana were Irene Sargent and the defendant.
At trial, Sargent was allowed to testify freely as to her conversations with the defendant and others immediately before, during and after the transactions. The defendant did not deny giving to Sargent the two bags of marijuana. His defense was "entrapment." Both the state and defense requested a jury charge on entrapment.
Although the court made the requested charge, it effectively prohibited the defense from presenting an entrapment defense by repeatedly sustaining the state's objections to the defendant's effort to relate what Sargent said to him immediately before, during and after the transactions. The state repeatedly objected to the defendant's testimony as hearsay (or improper impeachment) and the court repeatedly sustained the objections.
The trial court clearly erred. The testimony was not hearsay. In State v. Martin, 356 So.2d 1370, 1373-74 (La.1978), this court adopted Professor McCormick's brief definition of hearsay:

*388 "`Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' C. McCormick, Evidence, § 246 (Cleary ed. 1972)."
Defendant's testimony that was ruled inadmissible concerned statements made to him by Deputy Sargent. These statements were being offered to show the contents of their conversations and not to show the truth of what had been said. The court of appeal recognized that the testimony was admissible, but a majority found that the defendant failed to raise a contemporaneous objection to the court's ruling and, therefore, waived the objection.
The defense counsel had called the defendant to the stand and asked him to explain in his own words the circumstances of how, when and where he met Deputy Sargent. Defendant began his story about the events of October 15, 1983, but when he started to relate what Sargent had said to him he was met with an objection from the prosecutor that it was hearsay and improper impeachment testimony because of a lack of foundation. Defense counsel replied to this objection:
"Your Honor, I don't think we're talking exactly about impeachment. We're talking about the same set of circumstances, that the district attorney has had the opportunity of his prosecuting witness to go through. I certainly have the opportunity for the defendant to go through the same set of circumstances with his view of the facts as they were, in all fairness to the defendant on the trial of his case."
The trial judge sustained the state's objection and the defense counsel continued his questioning. Each time the defendant began to relate something that Sargent said, he was met with an objection. To these objections defense counsel made the following complaints:
"It's betweenhe was right there, Mr. Coenan."
and
"He is certainly entitled to give his version of the facts, Your Honor, regardless of what she said"
The repeated efforts of the defense counsel to offer this testimony over prosecution objections and counsel's assertion of the grounds for admissibility, although not clearly articulated, were sufficient to amount to a contemporaneous objection under C.Cr.P. 841.
In State v. Jones, 332 So.2d 267, 269 (La.1976), the defendant complained of the trial court's refusal, upon state objection, to require an undercover officer to state the name of his confidential informant. The late Justice Tate, in rejecting the state's contention, held that:
"By stating to the court the action desired (requesting the witness to respond to the question), and the grounds for the request (that the witness was the only person besides the policeman to verify what actually took place, and was therefore necessary to the defense), the defendant adequately preserved this ground for review."
The court emphasized substance over form and did not impose a requirement that objecting counsel preserve his objection by uttering magic words, such as "please note my objection for the record."
There is no "magic word" formula necessary for remarks to constitute an objection. In State v. Vanderpool, 493 So.2d 574 (La.1986), this court recently pointed out that "our law is ... settled that an objection need not be raised by incantation." Rather, it is sufficient that a party, at the time of the ruling, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, together with the grounds therefor. C.Cr.P. 841; State v. Vanderpool, supra; State v. Boutte, 384 So.2d 773 (La.1980). See, also, State v. Lee, 346 So.2d 682, 684 (La.1977), where this court stated that the contemporaneous objection rule is not inflexible, but is "intended *389 to promote judicial efficiency and to insure fair play."
The defendant was entitled to testify about the events and declarations made before, during and after the transfers of marijuana. The trial court erred in not allowing defendant to state his version of the facts and, in doing so, effectively prevented the defendant from presenting his entrapment defense, a substantial violation of a constitutional right. La. Const. of 1974, Article 1, § 16. The court of appeal also erred in limiting its consideration to the question of whether defendant had failed to object to the ruling of the trial judge.
Defendant's second assignment of error concerns the trial court's refusal to allow defense witness, Karen Shoemaker, to testify in the defense's case in chief. Karen Shoemaker is the bartender at the Melody Lounge and the ex-wife of defendant.
At the beginning of the trial, the state requested that all witnesses be sequestered. Defense counsel did not call Mrs. Shoemaker at that time to place her under the rule because he did not intend to call her as a witness. After Deputy Sargent testified, the defense realized that Mrs. Shoemaker could present contradictory testimony and called her to the stand. The state objected on the ground that she had not been sequestered. The court sustained the objection even though it is uncontroverted that Mrs. Shoemaker was not present in the courtroom during any of the trial proceedings prior to her being called as a witness.
The court of appeal correctly found that "LSA-C.Cr.P. Art. 764 notwithstanding, there are constitutional limitations on the trial judge's exercise of his discretion to disqualify witnesses from testifying. Sixth Amendment, United States Constitution, La. Const. Art. 1, § 16; State v. Boutte, 384 So.2d 773 (La.1980); State v. Jones, 354 So.2d 530 (La.1978)...." State v. Shoemaker, supra at 1085-86. In view of the fact that any violation of the rule of sequestration was without the consent, connivance, procurement or knowledge of the defendant or his counsel, the exclusion of the defense witness was constitutionally impermissible. State v. Jones, supra.
Although the court of appeal found Mrs. Shoemaker's testimony not to be merely cumulative or corroborative, it took a narrow view of its importance and value to the defense. The court found that the testimony would "question one aspect of an important prosecution witness's testimony with respect to the first alleged transaction..." State v. Shoemaker, supra at 1088. Because of the nature of the transaction Deputy Sargent is effectively the only prosecution witness; consequently, any testimony which would have reflected on her credibility was important to the defense. In addition, Mrs. Shoemaker was in a position to offer testimony that might have substantially helped defendant's entrapment defense. The court of appeal held that the exclusion of Mrs. Shoemaker's testimony was harmless error beyond a reasonable doubt. This conclusion is based primarily on the fact that the defendant admitted giving the marijuana to Sargent. The court of appeal, however, overlooked the fact that a defendant's admission of unlawful conduct is the beginning, not the end, of the inquiry when entrapment is asserted. Consequently, defendant's admissions can scarcely render "harmless" evidence tending to cast doubt on the conduct and credibility of the state's principal witness.
The effect of the trial court's erroneous rulings was to prevent the defendant from asserting his entrapment defense, depriving him of a fair trial.
For these reasons, the conviction and sentence are reversed, and the case is remanded for a new trial.
WATSON, J., concurs and applauds the lucid analysis of the "hearsay" issue.