882 So.2d 670 (2004)
STATE of Louisiana, Appellee
v.
Robert Charles HENSON, Appellant.
No. 38,820-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 2004.
Carey J. Ellis, III, Louisiana Appellate Project, for Appellant.
John Schuyler Marvin, District Attorney, Carl Ekendahl and John M. Lawrence, Assistant District Attorneys, for Appellee.
Before GASKINS, PEATROSS and DREW, JJ.
GASKINS, J.
The defendant, Robert Charles Henson, appeals his conviction for aggravated battery, claiming that the evidence presented is insufficient to support his conviction. For the following reasons, we affirm.

FACTS
The defendant met Rhonda Buford in March 2001 when they were both undergoing treatment at a drug rehabilitation center. In August 2001, they had been living together at the Siesta Motel in Bossier City for about three weeks.
*671 On the evening of August 5, 2001, Buford arrived at the motel around 5:00 p.m., after working at a Shreveport restaurant. Buford ate dinner with her minor daughter and the defendant. Then Buford and the defendant drank and smoked crack cocaine. Around 11:00 p.m., the defendant gave Buford $10 and sent her out to buy more crack. Buford stated that she purchased a rock of crack, but then went to a friend's house where she continued to drink and she smoked the cocaine. While she was gone, the defendant called the father of Buford's daughter to come and get the child.
When Buford arrived at the motel room between 2:00 a.m. and 3:00 a.m. on August 6, 2001, the defendant became angry that she returned without the drugs or the money. According to Buford, the defendant threatened to kill her. In the ensuing struggle, he stabbed her in the leg with a steak knife. He then held her down while she bled profusely and refused to allow her to seek medical attention.
The next morning, he arranged to go with her to the Schumpert Hospital emergency room, but first they stopped by the Shreveport restaurant where she worked to pick up Buford's pay check. The check was not available at that time. The defendant went back to get it while Buford was treated at the hospital.
At the emergency room, Buford was treated for a cut on her right thigh which was three to four inches deep and approximately eight inches long. She told Dr. James Nichols, the emergency room physician, that she received the wound at a party.
The wound became infected and Buford went back to the emergency room twice during the week. On Friday, Buford told Dr. Nichols that the defendant stabbed her during an altercation. Because the alleged offense occurred in Bossier City, hospital personnel summoned the Bossier City Police.
The defendant was arrested at the hospital. He signed a form granting consent to search the motel room. Blood was found on the mattress, sheets, and clothing in the room. Police also discovered a steak knife which appeared to have blood on the blade. The defendant was charged with aggravated second degree battery.
The defendant was tried by a six-person jury on March 19, 2002. Buford testified at trial that she is a crack addict and met the defendant in a drug rehabilitation center. They began living together within several months. Buford stated that on the evening of this incident, she and the defendant were drinking and smoking crack. She went out to purchase more crack, but smoked it with friends before she returned to the motel.
When she arrived at the motel, Buford testified that the defendant was angry because she did not have either the crack or the money. She claimed that he hit her. She ran into the bathroom where she put her back against the door and her feet against the toilet. She said he was "ranting and raving that he's going to kill" her and he pushed on the door so hard that the commode broke.
Buford further testified that after the defendant broke into the bathroom, he dragged her out and continued to threaten to kill her. He accused her of prostitution. He picked up a knife from a dresser and while she was trying to push away from him, he aimed at her chest with the knife. She put up her legs and was stabbed in the top part of her right thigh.
She said she could feel the blood under her and that she got blood on some sheets and the mattress. She testified that the defendant dropped the knife and she put it under the bed.
*672 Buford said that she begged the defendant to call 911, but instead he sat on top of her for about 45 minutes. He then got out a Bible and told her that she was evil and had caused him to do this to her. She continued to beg him to call 911 or someone to get her to a hospital. She claims that he told her he would rather she lay there and die because he would be in jail before the day was out. The defendant eventually called a friend, but that person said he did not have money for gasoline. The defendant allowed Buford to wrap a sheet around her leg. The defendant lay through the night with his leg around her so he would know if she got up to leave or call anyone.
Buford said that she finally dozed off and that the next morning the defendant got her up. They were up, dressed, and ready to leave the motel at 8:00 a.m. She said he called his cousin to take them to pick up her pay check since the rent was due. That cousin took them to the Shreveport restaurant where she worked and left them there. Because her check was not ready, the defendant called another cousin, Dwayne Hardy, to drive them to Schumpert Hospital.
Buford testified that Dr. Nichols treated her that day and that when asked how the injury happened, she told him she was at a party in Shreveport and "someone" stabbed her. Since she had waited so long to seek treatment, she said the wound could not be sewn. She was given a prescription for antibiotics. She claimed that the defendant would not allow her to fill the prescription.
Buford said she came back to the emergency room two days later and the wound "was infected real bad by Wednesday." She was treated by a different doctor. By Friday, her leg was worse so she returned to the emergency room and was seen by Dr. Nichols again. She said she told him "exactly what had happened that Monday" and asked for help in getting away from the defendant.
Since the incident occurred in Bossier City, officers from the Bossier Police Department were alerted. Buford testified that she had given a statement to the police, but that she subsequently changed her story so the defendant "wouldn't have to go and do any jail time."
On cross-examination it was shown that she had written to the defendant indicating that the knife wound was the result of an accident where she had picked up the weapon and "he grabbed the knife and fell" onto her.
Buford was also questioned about the information she had furnished the defense which was fashioned into a written statement. Buford said that she went to defense counsel's office, but she refused to sign an affidavit declaring that the defendant accidentally stabbed her. Buford stated that members of the defendant's family contacted her frequently seeking to have her drop the charges against him.
Buford acknowledged that she had given the defendant money and visited him while he was in jail. She claimed to have ceased these activities in November 2001. Buford said that at the time she wrote the letter to the defendant stating that her injury was accidental, the defendant had total control over her and he and his family influenced her to write the letter.
The state called Dr. Nichols who testified that he initially treated Buford for a deep laceration on the inner portion of her right thigh. The cut was three to four inches deep and about eight inches long. The wound was close to several arteries in the leg, but none were severed. He said he saw her a few days later and the wound was severely infected. He stated that she had been back to the facility a few days *673 before and had received treatment from a different doctor. He testified that she had received an injection of antibiotic as well as a prescription during that visit. He said that she had not gotten the prescription filled. According to Dr. Nichols, a social worker assisted in getting the medicines for her. He indicated this was a routine practice for a patient who cannot afford the medication.
Stephen Luebbert, a Bossier City police officer, testified about the statement Buford had given him at the hospital on August 10, 2001. The statement tracked the sequence of events Buford related while she was on the witness stand. Luebbert indicated that the defendant was apprehended at the hospital by officers from the Shreveport Police Department, but Luebbert took custody of him and transported him to the Bossier City jail.
A Bossier City Police Department detective, Jeff Cole, testified for the state. He recounted Buford's statement given to him at the hospital. That statement was corroborative of the testimony Buford had given at trial. He testified that Buford later gave a taped statement at the police station which was consistent with the one she gave at the hospital.
Detective Cole also testified that the defendant gave a statement. Cole said that right after being advised of his rights, the defendant was asked if he knew why he had been arrested. The defendant said, "Well, I guess she's saying I stabbed her." The defendant said on the night the victim was stabbed, she was smoking crack cocaine and had gone out to prostitute herself. He claimed that a guy that picked her up cut her leg.
Cole further testified that he asked the defendant about the condition of the motel room. The defendant said nothing should be wrong with the toilet. The defendant told Cole that there was only a "little flimsy knife that they used to, like, butter bread" in the motel room.
The state called Sergeant Fred Gregory of the Bossier City Police Department as a witness. He testified about the condition of the motel room. He said that there were sheets and a bedspread with what appeared to be "quite a bit" of blood on them. He also said the bathroom door was broken and the toilet was dislodged from the floor.
Another Bossier City police officer, Shannon Hodges, testified for the state regarding the condition of the motel room and the knife. This officer said there was a large bloodstain on the end of the bed. A comforter and sheets had blood stains. A rag and pair of shorts in the sink were "both covered with blood." Hodges testified that he found a knife with blood on it under the bed and observed that the toilet was broken away from its base.
The Bossier City Police Department officer who is responsible for evidence, Kevin Ross, testified about the chain of evidence regarding the knife that had been sent to the Northwest Louisiana Crime Lab. It was admitted into evidence.
The defense called Kirby Gray, the father of Buford's minor child. He testified that on the night of August 5, he went to the motel to pick up his daughter. He said the defendant called him to come pick the child up because Buford was not there.
The defendant's mother, Brenda Sims, was also called by the defense. She testified that Buford told her that her son had cut her, but that he did not mean to hurt her. Sims stated that she had talked to Buford on the telephone numerous times.
Handy, the defendant's cousin, testified that he gave Buford and the defendant a ride from the restaurant where Buford worked to the hospital. Handy, a registered *674 nurse, testified that Buford was a little pale and "somewhat shaky." He testified that she did not appear to be afraid of the defendant on that day. Handy also testified that Buford called him in August to ask for a ride to go see the defendant in jail.
At the conclusion of the trial, the jury convicted the defendant of the responsive verdict of aggravated battery. He was sentenced to serve ten years at hard labor. The defendant was granted an out of time appeal on November 19, 2003. He asserts that there was insufficient evidence upon which to base his conviction.

LEGAL PRINCIPLES
Although the record reflects that the defendant did not file a motion for post verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments advanced by the defendant in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
In State v. Williams, 35,911 (La.App.2d Cir.9/18/02), 828 So.2d 180, this court pointed out that:
When a witness is impeached, this simply means the jury, as the trier of fact, is presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury is prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony. State v. Dunn, 30,346 (La.App.2d Cir.2/25/98), 708 So.2d 512; State v. Bender, 598 So.2d 629 (La.App. 3d Cir.1992), writ denied, 605 So.2d 1125 (La.1992).
Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison *675 or other noxious liquid or substance to another. La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. A "dangerous weapon" includes any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3).
In order to convict the defendant of aggravated battery, the state must prove that the defendant intentionally used force or violence upon the victim, that the force or violence was inflicted with a dangerous weapon, and that the dangerous weapon was an instrumentality used in a manner likely or calculated to cause death or great bodily harm. State v. McGee, 37,919 (La.App.2d Cir.12/10/03), 862 So.2d 452.

DISCUSSION
The testimony that Buford gave at trial on March 19, 2002, regarding the scenario of the fight and the stabbing matched the details of statements she made to the doctor and two police officers on August 10, 2001. The police testified about the broken toilet and the location of the knife found in the motel room, corroborating Buford's testimony regarding her escape into the bathroom and hiding the knife under the bed after the attack.
The jury heard the victim's testimony and observed her while she was cross-examined about her inconsistent statements and letter suggesting that she was accidentally stabbed by the defendant. The jury heard her explain why she had originally told the doctor that a stranger had cut her and why she had written letters regarding the defendant's lack of culpability.
The jury was also able to consider the defendant's statement given to the police officer. When asked why he thought he had been arrested, he said, "Well, I guess she's saying I stabbed her." The defendant claimed that Buford went out and engaged in prostitution for drugs and that she had the cut on her leg when she returned to the motel room. The defendant denied having a knife that could do damage and denied having a broken toilet. The direct evidence proved the defendant's statements about the knife and the toilet to be false.
The jury assessed Buford's version of events related to the police and testified to at trial. She was found to be credible. The testimony presented by Buford and corroborated by the physical evidence in the motel room was sufficient for a rational jury to find that the defendant had the intent to harm Buford by stabbing her. The evidence is sufficient to show that the defendant intentionally used force or violence upon Buford by stabbing her with a knife which, in the manner used, was likely or calculated to cause death or great bodily harm. The jury obviously believed the victim when she said that the defendant was angry when she returned to the motel room in the early morning hours without drugs he had sent her out to get and that he stabbed her. We find that the evidence is sufficient to support the defendant's conviction of aggravated battery.

CONCLUSION
For the following reasons, we affirm the conviction and sentence of the defendant, Robert Charles Henson.
AFFIRMED.