MARC E. JOHNSON, Judge.
| {¡Defendant, Carlos Cartagena, was charged with resisting a police officer with force or violence in violation of La. R.S. 14:108.2 (Count 1) and aggravated battery in violation of La. R.S. 14:34 (Count 2). He proceeded to trial on February 1, 2011, and a six-person jury found him guilty as charged on both counts. The trial court subsequently sentenced defendant to two years at hard labor on Count 1 and seven years at hard labor on Count 2, with both sentences to run concurrently.
*1172 Defendant appeals his convictions and raises three assignments of error: (1) there was insufficient evidence to convict him on both counts, (2) he was prevented the right to present a defense, and (3) the trial court impermissibly admitted gruesome photographs. For the reasons that follow, we affirm defendant’s convictions.

FACTS

On the night of July 25, 2010, Sergeant Michael Cummings of the Jefferson Parish Sheriffs Office worked a paid detail for Latin Dance Night at Salvatore’s Restaurant at 3226 North Arnoult Rd. in Metair-ie. He and another officer were [ sstanding outside the restaurant to ensure there were no problems in the parking lot and to be visible in order to deter criminal activity. At one point, Sgt. Cummings entered the restaurant and observed several individuals standing in line to purchase alcohol. Sgt. Cummings saw defendant approach someone in the line from behind, raise his arm, and make a downward motion.
After hearing the sound of a bottle breaking, Sgt. Cummings heard people yell and saw the victim fall to the ground. Sgt. Cummings grabbed defendant from behind and pulled him into the wait staff prep area, where there was more lighting and fewer people, to make the arrest. Defendant turned around, made eye contact with Sgt. Cummings, and began throwing punches at Sgt. Cummings, hitting him in the arms and torso as Sgt. Cummings was trying to arrest him. Sgt. Cummings repeatedly told defendant to stop fighting and that he was under arrest, but defendant continued to fight. Sgt. Cummings testified that he probably gave verbal commands to defendant in both English and Spanish because it was a habit he had developed from working in the club.
Realizing that he might not be able to use physical force to subdue defendant, Sgt. Cummings separated himself from defendant with his baton and drew his taser. However, he did not use the taser because a female got between him and defendant and started screaming and waving her arms. Sgt. Cummings ultimately used his baton to strike defendant on his arms and legs and force him to the ground. He eventually handcuffed defendant and brought him outside the restaurant. Thereafter, the victim, Hector Molina, and his girlfriend, Elsa Abrego, exited the restaurant, and Sgt. Cummings noticed that Mr. Molina was holding a bloody rag to his neck.
Mr. Molina testified that he and his girlfriend arrived at Salvatore’s between 11:00 p.m. and 12:15 a.m. Unable to find a table, Mr. Molina’s friend, “Barraco,” |4told them they could sit at his table. Ms. Abrego sat down, while Mr. Molina stood. Later, the two danced. When they returned to the table, they found some women sitting in the chairs. Ms. Abrego said something to the women, and the women got up and left.
Manuel Reyes, a friend of both defendant and the victim, started arguing with the victim because he thought Mr. Molina had taken the chairs away from the women. Mr. Reyes’s wife came over and led her husband away from the table. After-wards, Mr. Molina left the table to buy beer. As he stood in line, he felt a blow from behind which caused him to fall. Mr. Molina suffered injuries to his neck that required medical treatment as a result of the blow.
Ms. Abrego testified that she saw defendant approach Mr. Molina from the back and hit him in the back with a bottle. She stated she never saw defendant and Mr. Molina exchange words. Ms. Abrego also testified that after the incident, defendant resisted and struggled with the officer, so the officer started hitting defendant with a *1173 baton until he got defendant onto the floor. Thereafter, the officer handcuffed defendant.
The defense presented the testimony of defendant’s wife, Mirim Ceballos. She testified that when she and defendant arrived at Salvatore’s, they sat down at a table that was reserved for them and some friends by Mr. Reyes. At some point, a man and a woman came up to the table, and the woman said, “Who are those b* *ches that are sitting out [sic] on the table, those b* *ches better get out [sic] of the table because that’s our table.” The man then said, “those son of a b* *ehes better get off the table because that’s ours.” In response, defendant’s group left the table. According to Mrs. Ceballos, the man then yelled at Mr. Reyes that he knew him and where he lived, and that he was going to kill all of them.
Is As Mrs. Ceballos walked away from the table, the man grabbed her by the shoulder and said something obscene to her. When she turned around to grab defendant, she saw that the man was already hitting defendant. Mrs. Ceballos called her friends to come over and then saw the officer hitting defendant with a baton. Her sister screamed and told the officer not to hit defendant. Mrs. Ceballos explained that defendant spoke little English, that the officer only told defendant to get down in English, and that defendant was trying to get down.
Mr. Reyes testified that he, defendant, and others were at a birthday party when one of his friends called to let him know that he had a table reserved at Salvatore’s if Mr. Reyes wanted to come to the club. Mr. Reyes, defendant, and others arrived at Salvatore’s between 10:30 and 11:00 p.m. and sat at their friend’s reserved table. At some point, Mr. Reyes went to the bar to get beer for the group. As he did so, he heard Mr. Molina hollering and cursing and saying he was going to kill them all.
Mr. Reyes put the beer on the table, and he and his wife told Mr. Molina not to talk to them that way. Mr. Reyes stated the women at the table decided they did not want any problems, so they left. Mr. Reyes testified that he did not see defendant hit Mr. Molina, but he saw Mr. Molina coming at defendant, and then saw Mr. Molina bleeding.
After the incident, Mr. Reyes testified the officer continually hit defendant. He stated he heard the officer tell defendant to get down in English only. Defendant did not understand the officer, so Mr. Reyes told defendant to get down in Spanish. Afterwards, defendant got down on his knees, and the officer put handcuffs on him. Mr. Reyes claimed the officer hit defendant after he was already handcuffed. He stated he did not see the officer before the incident.

\ .DISCUSSION

Sufficiency of the Evidence

Defendant argues the evidence was insufficient to support his convictions. In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in *1174 order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.

Resisting an Officer

Regarding his resisting an officer conviction, defendant asserts the State failed to show he knew that Sgt. Cummings was acting in an official capacity. He also maintains he was grabbed from behind and just reacted to his surroundings which included poor lighting and much excitement.
Defendant was convicted of resisting a police officer with force or violence, a violation of La. R.S. 14:108.2. La. R.S. 14:108.2(A) provides:
|7A. Resisting a police officer with force or violence is any of the following when the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty:
(1) Using threatening force or violence by one sought to be arrested or detained before the arresting officer can restrain him and after notice is given that he is under arrest or detention.
(2) Using threatening force or violence toward or any resistance or opposition using force or violence to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
(3) Injuring or attempting to injure a police officer engaged in the performance of his duties as a police officer.
(4) Using or threatening force or violence toward a police officer performing any official duty.
The evidence showed Sgt. Cummings was a police officer in uniform working a paid detail.[1] During most of the incident, defendant was facing Sgt. Cummings and could see he was wearing his Jefferson Parish Sheriffs Office uniform. Sgt. Cummings was attempting to arrest defendant for aggravated battery after seeing defendant strike the victim with a bottle and, thus, was acting in the performance of his official duties. Despite being repeatedly told that he was under arrest and to stop fighting, defendant resisted Sgt. Cummings by punching him in the arms and torso.
We find this evidence, viewed in a light most favorable to the State, sufficiently proves the elements of resisting an officer with force of violence.

Aggravated Battery

Regarding his aggravated battery conviction, defendant argues the State failed to prove a dangerous weapon was used because the officer did not actually see him strike the victim with the bottle. Defendant also contends that because the 18victim was the aggressor, he cannot be found guilty under the aggressor doctrine. He further asserts the trial testimony was conflicting.
To support a conviction of aggravated battery, the State must prove: (1) the defendant intentionally used force or violence against the victim; (2) the force or violence was inflicted with a dangerous *1175 weapon; and (3) the dangerous weapon was used in a manner likely to cause death or great bodily harm. La. R.S. 14:34; State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1102, writ denied, 98-3219 (La.5/7/99), 741 So.2d 28. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(A)(3). A beer bottle may constitute a dangerous weapon. See State v. Randall, 99-2476 (La.12/15/00), 776 So.2d 424, 425.
Defendant first argues the evidence was insufficient because the officer did not actually see him strike the victim with a bottle and, therefore, the State failed to prove a dangerous weapon was used. Sgt. Cummings testified he observe people standing in line waiting to purchase alcohol. He then saw defendant approach the victim from behind, raise his arm, and make a downward motion. Afterwards, Sgt. Cummings heard the sound of a bottle breaking, heard people yell, and saw the victim fall down. Sgt. Cummings identified a photograph of a broken beer bottle and glass shards he found lying on the ground near the back bar area that evening. He also identified photographs of the victim’s lacerations caused by the beer bottle.
A reasonable trier of fact could conclude from these circumstantial facts that defendant hit the victim from behind on the side of his neck with a glass beer bottle. Additionally, there was direct evidence of defendant’s guilt as the victim’s girlfriend testified that she saw defendant approach the victim from behind and hit him in the back with a bottle.
| gDefendant next argues the victim was the aggressor and, therefore, he cannot be found guilty as charged under the aggressor doctrine. La. R.S. 14:21 provides that a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. The trial court instructed the jury as to the aggressor doctrine.
Defendant’s witnesses indicated that the victim was the aggressor. Defendant’s wife testified that the victim insulted them and used profanity after which the victim started hitting the defendant. Mr. Reyes, defendant’s friend, also testified that prior to the incident, he saw the victim coming at defendant. However, the State’s witnesses reflected that defendant was the aggressor. According to Sgt. Cummings, the victim, and the victim’s girlfriend, the victim was standing in line when defendant hit him from behind. These witnesses testified that defendant and the victim were not engaged in an altercation immediately prior to the incident.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. The jury obviously found the State’s witnesses more credible than those of defendant. Additionally, even if the jury believed that the victim was the initial aggressor, the jury could have also found defendant became the aggressor when he approached the victim from behind and hit him.[2]
*1176 | lnIn light of this evidence, a rational trier of fact could have found the required elements to support a conviction for aggravated battery were proven beyond a reasonable doubt.

Right to Present a Defense

Defendant argues that the trial judge erred by refusing to permit defense counsel to question Sgt. Cummings about what a witness in the parking lot told him after the incident. He contends this line of questioning should have been allowed under the theories of compelling circumstances and impeachment.
The State responds that defendant should be precluded from raising this issue because he failed to lodge an objection to the trial court’s ruling, and he failed to proffer the substance of the excluded testimony.
During the cross-examination of Sgt. Cummings, defense counsel asked whether a female approached him in the parking lot after the incident. The prosecutor objected and a bench conference was held. The prosecutor argued that defense counsel was about to elicit hearsay. Defense counsel replied that Sgt. Cummings wrote in his report that a witness made statements to him, but he did not get her identity. The prosecutor noted that the witness at issue was not in court. The trial judge stated that although he did not know the type of questions counsel intended to ask, he was inclined to sustain the hearsay objection. Defense counsel stated he would rephrase the question.
After the bench conference concluded, defense counsel said he was withdrawing his previous question and rephrasing it. He then asked Sgt. Cummings whether he had obtained any other version of events that night other than what the victim and the victim’s girlfriend had told him. Sgt. Cummings responded that someone had told him about an issue regarding a table. The trial | n judge sustained the State’s previous objection and defense counsel pursued a different line of questioning regarding another topic.
La.C.Cr.P. art. 841(A) provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. There is no “magic-word” formula necessary for remarks to constitute an objection. State v. Shoemaker, 500 So.2d 385, 388 (La.1987). Rather, it is sufficient that a party, at the time of the ruling, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, together with the grounds therefor. La.C.Cr.P. art. 841; Shoemaker, supra. Where the defense counsel acquiesces when the court sustains a State’s objection to the examination of a witness, that objection is waived. State v. Huizar, 414 So.2d 741, 749 (La.1982); State v. Smith, 39,698 (La.App. 2 Cir. 6/29/05), 907 So.2d 192, 200.
In State v. Charles, 326 So.2d 335 (La. 1976), the defendant contended the trial court erroneously sustained the State’s objections to cross-examination questions asked by defendant’s counsel. The supreme court stated that, on these occasions, although defendant did not expressly object, the court was necessarily aware of the action which defendant desired the court to take, i.e., to overrule the State’s objection and allow him to put the questions to the State’s witness. However, it noted that defendant’s counsel neither complained of the court’s ruling nor apprised the court of the grounds upon which *1177 he was entitled to ask the questions. Instead, the supreme court stated that counsel apparently acquiesced in the court’s ruling by proceeding with his cross-examination along a different line of questioning. The supreme court found that because defendant did not comply with La. C.Cr.P. art. 841, he could not complain after verdict of the occurrences alluded to in the assignments of error. Id., 326 So.2d at 336-37.
112Additionally, in State v. Favors, 09-1034 (La.App. 5 Cir. 6/29/10), 43 So.3d 253, writ denied, 10-1761 (La.2/4/11), 57 So.3d 309, defendant argued the trial court improperly restricted his right to confront a witness against him by restricting the cross-examination of a crucial State witness. The record showed that after the State objected to defense counsel’s question, defense counsel said he would move on. This Court found that defendant was precluded from raising this error on appeal because defense counsel failed to contemporaneously object to the trial court’s ruling, and he acquiesced when the trial judge told him to rephrase the question and sustained the State’s objection. Id., 43 So.3d at 260-61.
In the instant case, the trial judge indicated he would sustain the State’s hearsay objection depending on the question asked. Defense counsel then withdrew his question and rephrased it. Thereafter, the trial judge sustained the State’s objection; however, defense counsel neither complained of the court’s ruling nor apprised the court of the grounds upon which he was entitled to ask the questions. Instead, defense counsel acquiesced in the court’s ruling by proceeding with his cross-examination along a different line of questioning. As such, we find defendant is precluded from raising this error on appeal.

Admission of Gruesome Photographs

Defendant argues that the trial judge erred by admitting into evidence gruesome photographs of the victim’s injuries, which he contends were unnecessary to prove any element of the State’s case and were more prejudicial than probative. The State responds that the trial judge did not abuse his discretion in admitting the evidence, noting that the photographs were graphic, but not unduly gruesome. The State also responds that the photographs supported the testimony of the State’s witnesses that the victim was struck from behind with a glass bottle, | )Sand that the glass bottle was used in a manner likely to produce death or great bodily harm.
The State is entitled to the moral force of its evidence. State v. Condley, 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 892-93, unit denied, 05-1760 (La.2/10/06), 924 So.2d 163. Generally, photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, subject to the test that their probative value outweighs any prejudicial effect. State v. Battaglia, 03-692 (La.App. 5 Cir. 11/25/03), 861 So.2d 704, 710, unit denied, 04-1701 (La.4/29/05), 901 So.2d 1058. Photographic evidence is properly admitted unless it is so gruesome that it overwhelms jurors’ reason and leads them to convict the defendant without sufficient other evidence, i.e., when the prejudicial effect of the photographs substantially outweighs their probative value. State v. Jones, 99-798 (La.App. 5 Cir. 11/10/99), 748 So.2d 1176, 1179, writ denied, 00-306 (La.12/8/00), 775 So.2d 1076. Moreover, the cumulative nature of photographic evidence does not render it inadmissible if it corroborates the testimony of witnesses on essential matters. State v. Richthofen, 01-500 (La.App. 5 Cir. *1178 11/27/01), 803 So.2d 171,188, citing State v. Lane, 414 So.2d 1223 (La.1982).
Prior to trial testimony, defendant objected to the photographs the State intended to use at trial on the basis they were prejudicial. The State argued the four or five pictures were relevant to prove an element of the offense of aggravated battery, namely, that a dangerous weapon was used, especially since a bottle was not typically considered a weapon. The trial court reviewed the photographs and did not find them gory. It further remarked that the State had to prove that the dangerous weapon was used in a manner likely to cause death or great bodily harm. The trial court ruled the photographs were admissible, noting that the State |14had the right to the full force and effect of its evidence and that the probative value of them outweighed any prejudicial effect.
Sgt. Cummings identified the photographs as accurate depictions of the victim after the incident. He stated the pictures showed lacerations the victim received after being hit by the beer bottle. A review of the photographs show that the victim sustained a very deep, long cut from his ear down the left side of his neck, approximately six inches in length. Although the pictures are graphic and bloody, they are not so gruesome so as to overwhelm a jury’s reason and lead it to convict defendant without sufficient other evidence. Additionally, the photographs were necessary to corroborate the State’s witnesses’ testimony that the victim was hit with a glass bottle, and to prove an element of the offense of aggravated battery, namely, that the glass bottle was a dangerous weapon because in the manner used, it was calculated or likely to produce death or great bodily harm. Moreover, the photographs of the victim’s injury were especially important considering there was very little descriptive testimony as to the extent and severity of the injury. Thus, we find the trial court did not err in admitting photographs of the victim’s injuries into evidence.

ERRORS PATENT

We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920, and find no errors that require corrective action.

DECREE

For the reasons discussed above, defendant’s convictions for resisting a police officer with force or violence and aggravated battery are affirmed.

AFFIRMED.

. An officer working a paid detail is considered to be acting in his official capacity. See State v. Brown, 09-863 (La.App. 4 Cir. 12/2/09), 26 So.3d 845.

. See State v. Favorite, 03-425 (La.App. 5 Cir. 11/25/03), 862 So.2d 208, 214, writ denied, 03-3529 (La.4/23/04), 870 So.2d 298; State v. Richards, 06-1553 (La.App. 3 Cir. 5/2/07), 956 So.2d 160, 171-72, writ denied, 07-1129 (La. 12/14/07), 970 So.2d 529; and State v. *1176 London, 07-473 (La.App. 5 Cir. 11/27/07), 973 So.2d 782, 789-90, where the courts found that even if the juries believed that the victims were the initial aggressors, the juries could have also believed that the defendants at some point became the aggressors.