47 So.3d 524 (2010)
STATE of Louisiana, Appellee
v.
Lynn BESS, III, Appellant.
No. 45,358-KA.
Court of Appeal of Louisiana, Second Circuit.
August 11, 2010.
Rehearing Denied September 16, 2010.
*526 Louisiana Appellate Project by Mark O. Foster, for Appellant.
Lynn Bess, III, Pro Se.
Jerry L. Jones, District Attorney, John F. Aplin, Assistant District Attorney, for Appellee.
Before GASKINS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Lynn Bess, III, was convicted by a jury of carjacking in violation of La. R.S. 14:64.2. Following a habitual offender hearing, Defendant was adjudicated a fourth-felony offender, including two convictions of crimes of violence, and was sentenced to life imprisonment without the benefit of parole. Defendant now appeals his conviction. For the reasons stated herein, the conviction of Defendant is affirmed.

FACTS
On January 31, 2008, Defendant was charged by bill of information with two counts of carjacking in violation of La. R.S. 14:64.2. On February 27, 2009, the State filed an amended bill of information charging Defendant with only one count of carjacking in violation of La. R.S. 14:64.2. Defendant subsequently filed a Motion to Appoint a Sanity Commission, which found Defendant competent to stand trial.
Trial began on July 13, 2009. The evidence at trial revealed that, on December 15, 2007, Defendant forced his way into a truck that was stopped at a stop sign, armed himself with a screwdriver that was on the dashboard of the truck and demanded the driver of the truck to drive.
Leola Jessie Siebert ("Siebert") testified that, on December 15, 2007, she left her residence at 1402B Cole Avenue in Monroe, Louisiana, to assist the boyfriend of her roommate, Robin. Robin advised Siebert that her boyfriend had been stopped by the police and needed someone to drive his vehicle away in order to prevent it from being towed. Since Robin had been drinking and could not drive, Siebert drove Robin's late model Ford pickup truck, with Ian Cooks and Lawrence Cooks accompanying her.
Siebert testified that she was not familiar with the area where the boyfriend was located and she got lost and missed her turn. While attempting to turn around to go in the correct direction, Siebert came to a stop sign at Owl Street and South College Street. There were two cars stopped in front of her at the stop sign.
Siebert testified that, while at this stop sign, Defendant, whom she had never seen before, approached the passenger side of the truck, jerked open the door and jumped into the truck, sitting on the lap of Lawrence Cooks. Once in the truck, he grabbed a screwdriver off the dash, pointed it at Siebert's neck and told her to "drive bitch." She testified that Defendant's actions "scared the hell out of her," she felt intimated by him and feared for her life. Siebert drove the truck as Defendant demanded because of her fear and intimidation. She further testified that she did not feel like she was in control of the vehicle. Siebert stated that she drove the vehicle until Defendant screamed for her to stop. Apparently, several police cars came into view near Powell Street and the American Legion Hall and Defendant demanded that Siebert stop the truck. Once the vehicle was stopped, Defendant dropped the screwdriver, jumped out of the truck and fled.
After absorbing the shock of what happened, Siebert drove around the American Legion Hall and made contact with Officer Richard Cole of the Monroe Police Department. *527 Siebert advised him of the incident and provided a description of the suspect. Officer Cole contacted other officers on his radio and began searching for the suspect. Siebert testified that Officer Cole returned approximately five to ten minutes later with the suspect for her to identify. She stated she was able to positively identify the suspect as the person who forcibly entered her truck. In open court, she identified the suspect from that night as Defendant.
Officer Cole testified that, on December 15, 2007, he was working with the Monroe Police Department assisting another officer with a traffic stop between Owl Street and Renwick Street near the rear of the American Legion Hall. At this location, Officer Cole made contact with Siebert, who advised him that, a couple of blocks away, she was stopped at a stop sign when a black male jumped into the truck, grabbed a screwdriver off the dash and demanded that she drive. When this person saw the police unit, he yelled for Siebert to stop and he jumped out of the vehicle. Officer Cole testified that Siebert appeared to be in fear, scared and shocked at what had just happened. He testified that, after Siebert had given him an in-depth description of the suspect, he contacted other officers and began searching the area. After a brief search of the surrounding area, Officer Cole testified that he located the suspect, handcuffed him and brought him back to Siebert to see if she could identify him. Officer Cole stated that Siebert and the other passengers immediately identified the suspect as the individual who had jumped into the vehicle. At that point, Officer Cole placed the suspect under arrest. Officer Cole identified the suspect for the jury as Defendant. He testified that Defendant's only statement was that Siebert and the other passengers had offered him a ride.
State's Exhibit 1, a screwdriver, was introduced into evidence. Officer Cole testified that he did not actually recover the screwdriver, but it was handed to him from inside the truck.[1] Officer Cole identified State's Exhibit 1 as the screwdriver he was given that night. On cross-examination, Officer Cole stated that no fingerprints were taken from the screwdriver because there was not a request for fingerprints.
The State called Ian Cooks, one of the passengers in the truck, as a witness. He identified Defendant as the individual who forced his way into the truck, armed himself with a screwdriver and demanded that Siebert drive. Ian testified that he was sitting in the middle next to Siebert, who was driving the truck, and his brother Lawrence Cooks was sitting on the passenger side. He also stated that no one knew Defendant, nor did anyone invite him into the truck. Further, on cross-examination, Ian testified that Defendant lunged at Siebert with the screwdriver and told her to drive.
Lawrence Cooks was also called as a witness by the State. He stated that, on December 15, 2007, he was with his brother and Siebert, and they were going to pick up his cousin's car. When they approached the intersection at Owl and South College, they were third in line at a stop sign. While at the stop sign, a man walked over to his side of the truck and jumped in on top of him. Lawrence testified that no one invited the man into the truck. He further testified that, once inside the truck, the man was rambling, grabbed the screwdriver off the dashboard and pointed it toward Siebert and told her to drive. He stated that, when the *528 man jumped into the vehicle, he felt nervous, and his brother and Siebert appeared to be scared.
Mr. Cooks testified that he identified the person who jumped into the truck that night; however, he was not able to "really say" if the person he identified that night was in the courtroom, as it had been a long time since the incident.
The only witness to testify on behalf of Defendant was Bernice Wells Coleman, Defendant's second cousin. She testified that Defendant stopped by her house on the evening of December 15, 2007, after 5:00 p.m., and that he stayed for a short time. On cross-examination, however, Ms. Coleman testified that she could not "remember exactly what date in time." Ms. Coleman did not provide any additional testimony.
As previously stated, the jury found Defendant guilty of carjacking. The trial judge ordered a presentence investigation. On August 24, 2009, the State filed an amended bill of information charging Defendant as a fourth-felony offender. In response, the defense filed a Motion to Quash Multiple Bill that was denied on September 29, 2009.
Following a hearing on the habitual offender bill, Defendant was adjudicated a fourth-felony offender and sentenced to life imprisonment without benefit of parole. Defendant's pro se Motion to Reconsider Sentence and defense counsel's Motion to Reconsider Sentence were denied. This appeal ensued.

DISCUSSION

Assignment of Error Number One (verbatim): The evidence was insufficient to convict Mr. Bess of carjacking, a violation of La. R.S. 14:64.2.
Defendant argues that the State's evidence failed to prove that he was guilty of carjacking because the State did not show there was a "taking." Specifically, Defendant argues that the State failed to show that Defendant "took" possession of the truck from the driver. He argues that the State's evidence only showed that Defendant jumped into the truck, grabbed a screwdriver and told Siebert to drive; however, he submits that he never tried to get any of the passengers out of the truck.
The State argues that there was sufficient evidence to support the conviction of carjacking. At trial, the driver of the truck (Siebert) and the passengers all testified that Defendant entered the truck without their consent, armed himself with a screwdriver and demanded that Siebert drive the truck. The State argues that Defendant used force and intimidation to take control over the vehicle; thus, Siebert did not have control of the truck. According to the State, there was, therefore, sufficient evidence to support the conviction. We agree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 *529 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La. App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
La. R.S. 14:64.2 provides in pertinent part:
Carjacking is the intentional taking of a motor vehicle, as defined in R.S. 32:1(40), belonging to another person, in the presence of that person, or in the possession of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation.
While the courts have not specifically addressed "taking" with respect to carjacking, they have relied on the analysis of "taking" discussed in the context of theft. State v. Baylor, 08-141 (La.App. 3d Cir.11/26/08), 998 So.2d 800, writ denied, 09-0275 (La.11/20/09), 25 So.3d 795. A "taking" includes an intent to usurp or negate the owner's dominion. State v. Victor, 368 So.2d 711 (La. 1979). In Victor, the court determined that the factual issue of whether there is a taking for purposes of theft is "whether the offender exerts control over the object adverse to or usurpatory of the owner's dominion." Victor, supra. It is not necessary to prove that the property taken belonged to the victim; rather, it is only necessary to show that the victim had a greater right to the item than the accused. State v. Banks, 96-652 (La.App. 5th Cir.1/15/97), 694 So.2d 401.
Viewed under the Jackson standard, the evidence presented at trial is sufficient to support the conviction of Defendant. Siebert testified that, on December 15, 2007, she drove her roommate's truck to assist her roommate's boyfriend. Ian and Lawrence accompanied her. While stopped at a stop sign en route to assist the boyfriend, Defendant jerked the door open, jumped in, grabbed a screwdriver off the dash, pointed it at Siebert and told her to "drive bitch." Siebert stated that she did not know Defendant, nor did she invite him into the truck. She testified, "I was in fear for my life. I figure I'd better drive." Defendant succeeded in taking control of the truck because Siebert drove as he demanded. Furthermore, the testimony of the passengers, Ian and Lawrence, was totally consistent with Siebert's testimony and corroborated her description of the incident and the identification of Defendant as the perpetrator.
In addition, Officer Cole testified that, once Siebert advised him of the incident and provided a description, he immediately began searching the area for the suspect. It is his testimony that, within minutes, he apprehended Defendant and brought him to Siebert, who immediately identified him as the man who jumped into the truck.
Thus, the evidence provided to the jury demonstrated that there was an intentional taking of the truck by Defendant through the use of force and intimidation in the presence of Siebert, and, therefore, was clearly sufficient to support a conviction of carjacking. This assignment is without merit.

Assignment of Error Number Two (verbatim): The trial court was in error to deny Lynn Bess' Batson challenge to the state's discriminatory use of peremptory strikes.
In his second assignment of error, Defendant argues that the trial court improperly *530 denied his Batson[2] challenges to the State's use of peremptory strikes against black jurors. He urges that the record does not show any differences in the white jurors and the black jurors that would have justified the State's peremptory challenges. Specifically, Defendant argues that the black jurors struck were similarly situated with prospective white jurors. Thus, he complains that the State systematically eliminated the black jurors.
It is well settled that the use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Batson decision is codified in our law in La. C. Cr. P. art. 795.
In State v. Draughn, 05-1825 (La.1/17/07), 950 So.2d 583, cert. denied, 522 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007), the proper reviewing process for a Batson claim, as recently described by the Supreme Court, was set forth as follows:
A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Id., at 97-98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 2331-2332, 162 L.Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, supra, at 768, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834.
In State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, the Louisiana Supreme Court held that the sole focus of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. See also State v. Juniors, 03-2425 (La.6/29/05), 915 So.2d 291, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006).
The trial court plays a unique role in the dynamics of a voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. Juniors, supra; State v. Myers, 99-1803 (La.4/11/00), 761 So.2d 498. A reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson, supra.
In the case sub judice, three panels of 14 potential jurors each, for a total of 42 potential jurors, were summoned and selected *531 for voir dire at the beginning of trial. The first panel consisted of seven white females, three white males, three black males and one black female. At the conclusion of the questioning of panel one, each side set forth its challenges for cause. Following the court's ruling on the challenges for cause, each side exercised its peremptory challenges. The State exercised peremptory challenges for Sandra Caroll, a black female, and Eddie Clark, a black male.
The second panel was called and questioned. It consisted of 14 potential jurors: seven white females, two white males, one Asian male, three black males and one black female. For this panel, the State exercised four (4) peremptory challenges, namely: Isiah Cooper, a black male; Arthur Thomas, a black male; Brittany Lenard, a black female; and Dennis Moore, a white male.
At this time, the defense lodged a Batson objection to the State's use of its peremptory challenges. The trial judge reviewed the State's peremptory challenges on both panels and noticed that a total of five out of six peremptory challenges were used on black jurors. Thus, the trial judge found that the defense made a prima facie showing of discrimination. Under Batson, therefore, the State was required to provide race-neutral reasons for exercising those challenges.
The State exercised its first peremptory challenge for Eddie Clark, a black male attorney. The State previously challenged Mr. Clark for cause, stating that Mr. Clark would not be able to give a hundred percent of his attention to the testimony because he would be preoccupied with his private practice and his obligations. The trial judge denied the challenge, stating that the State's reason was not grounds for challenge for cause in accordance with La. C. Cr. P. art. 797. As to its race-neutral reasons for the peremptory challenge, the district attorney reurged his reasons for the challenge for cause of Mr. Clark stating,
I just don't think that, ah, he would be able to fully concentrate on the trial. I think he'sthat, ah, he was, ah, and he even said that, that he didn't think that he could give it a hundred percent attention due to his private practice with all the depositions he had and other court obligations. Ah, that's why the State used preempt number one on that.
The trial judge accepted the State's reason as a proper race neutral reason for granting the challenge and denied Defendant's Batson challenge on Eddie Clark.
The State's second peremptory challenge was Sandra Carroll, a black female. The State exercised a peremptory challenge on Ms. Carroll because it did not believe she could give her full attention to the trial due to the fact that she had a sick family member out of town, specifically a gravely ill sister who lived in Jeanerette, Louisiana. The trial judge accepted this explanation as a sufficient race-neutral reason and denied Defendant's Batson challenge as it related to Sandra Carroll.
Next, the trial judge addressed the State's peremptory challenge against Isiah Cooper, a black male. The State's original response was that it struck Mr. Cooper because he was a juror on a previous criminal jury and voted in the minority and the State felt he would not be able to follow along with the majority. The trial judge, however, indicated that it was not satisfied with that explanation and asked the State if it had anything else to add. The district attorney explained:
All I'm justthat's my reason. It doesn't have anything to do with race. It was just simply the way he answered *532 the questions regarding the, ah, his previous jury experience.
Additionally, the State pointed out that it had also struck Dennis Moore, a white male, for the same reason.[3] Ultimately, the trial judge accepted the State's response and denied the Batson challenge as to Isiah Cooper.
Arthur Thomas, a black male, was next. The State argued that its reason for striking Mr. Thomas was that, during voir dire, he stated that he would want Defendant to testify. In addition, the State indicated that it did not believe Mr. Thomas would make a good juror because he was soft spoken. The State noted that, based on its observations during voir dire, Mr. Thomas would not be assertive enough to hold his position during jury deliberations. The State further argued that Mr. Thomas had indicated that he had family members in jail. The trial judge then requested that Mr. Thomas return to the courtroom for further questioning. The judge questioned Mr. Thomas with respect to his indication earlier during voir dire that he would require Defendant to testify. As Mr. Thomas began to speak, the judge had to ask him to speak louder. After the judge explained to Mr. Thomas that it was a defendant's constitutional right not to testify, Mr. Thomas agreed that he understood, but the fact that a defendant did (would) not testify would be in the back of his mind. As the questioning continued, Mr. Thomas stated that the fact that a defendant did (would) not testify would weigh heavily in his decision.
Following the re-questioning of Mr. Thomas, the trial judge found the reasons to be race neutral and, therefore, denied Defendant's Batson challenge as it related to Arthur Thomas.
The last peremptory challenge exercised by the State was for Brittany Lenard, a black female. Ms. Lenard was also challenged for cause. The State reurged its arguments given during the challenge for cause which were that it believed Ms. Lenard would not be able to apply the law as given and she would hold the State to a higher standard. The trial judge noted that Ms. Lenard stated that she would require proof beyond all doubt. Thus, the trial judge accepted the reasons given as race neutral and denied Defendant's Batson challenge as to Brittany Lenard.
As stated in Draughn, supra, the State's reason does not have to be persuasive or even plausible; so long as the reason is not inherently discriminatory, it suffices. Furthermore, a reviewing court owes the trial judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez, supra.
A review of the record indicates that the trial judge conscientiously and thoroughly evaluated each of the State's reasons for its peremptory challenges. For each of its peremptory challenges, the State did not refer to race of the jurors as a basis for the challenge. The State provided to the judge sufficient race neutral reasons for challenging each of the jurors based on either the prospective jurors' statements made during voir dire, or during re-questioning by the judge, and their demeanor. We, therefore, find this assignment to be without merit.

CONCLUSION
For the foregoing reasons, the conviction of Defendant, Lynn Bess, III, is affirmed.
AFFIRMED.

*533 APPLICATION FOR REHEARING
Before BROWN, GASKINS, CARAWAY, PEATROSS & DREW, JJ.
Rehearing denied.
NOTES
[1] Officer Cole did not indicate which occupant of the truck handed him the screwdriver.
[2] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)
[3] Dennis Moore stated during voir dire that he voted in the minority on a previous criminal jury trial.