LOLLEY, J.
| ] These appeals arise from the judgments of the 37th Judicial District Court, Parish of Caldwell, State of Louisiana where, following a jury trial, Andre Williams, Brushun Green, and Catrenia Maynor were each found guilty of armed robbery and false imprisonment with a dangerous weapon, violations of La. R.S. 14:64 and La. R.S. 14:46.1, respectively. Williams was sentenced to 10 years for false imprisonment and 60 years for armed robbery without benefit of parole, probation, or suspension of sentence, sentences to run consecutively; Green was sentenced to 10 years for false imprisonment and 90 years for armed robbery without benefit of parole, probation, or suspension of sentence, sentences to run consecutively; and, Maynor was sentenced to 10 years for false imprisonment and 30 years for armed robbery without the benefit of parole, probation, or suspension of sentence, sentences to run concurrently. For the following reasons, we reverse in part and affirm in part.
Facts
James Norris owns a home on Judge Road in rural Caldwell Parish where he has lived for many years. For nearly a decade, Norris lived in this home with his then-girlfriend, Julia Gill. Gill’s daughter, Catrenia Maynor, also lived with Norris for some of that time. Norris and Gill separated around 2005, at which time Gill moved out of Norris’ home.
Norris works out of the country on a rotating schedule; since he is often gone for long periods he entered into an arrangement with Betty Johnson to stay at his home, pay his bills, and care for his pets when he was away.
[2On December 14, 2008, Johnson was staying at Norris’ home while he was working in Kuwait. Johnson’s friend, Bobbie Jo Anders, was staying with her in the home as well. That afternoon a suspicious phone call came into the house phone. When Johnson answered, the caller claimed to have bought a vehicle from *1133 Norris and requested the title to that vehicle. Johnson’s suspicions were aroused because she did not know of a vehicle that Norris had sold; therefore, she called Norris’ brother and Julia Gill to inquire if either knew of this purported sale. Neither knew of any such transaction. Gill then reported the call to the Caldwell Parish Sheriffs Office (“CPSO”), which sent two deputies out to the house to speak with Johnson.
At around 11:00 that evening three individuals broke into Norris’ home with guns and began robbing the house. Johnson and Anders were held at gunpoint during the robbery until police arrived on the scene and the perpetrators fled. Three deputies chased down the three perpetrators as they ran from the home. The defendants were caught on the scene and arrested.
Williams, Green, and Maynor were each charged with one count of armed robbery and one count of false imprisonment with a dangerous weapon and tried together before a jury. All three defendants were convicted on all counts and sentenced. These appeals followed.
Discussion
On appeal, Williams’ appeal counsel brings four assignments of error, along with one assignment of error raised by Williams in his pro se |scapacity. Green’s appeal counsel brings three assignments of error, along with one assignment of error raised by Green in his pro se capacity. Maynor raises four assignments of error through her appeal counsel.

Sufficiency of the Evidence

In this first assignment of error, Williams and Green each claim that the evidence was insufficient to support their convictions of both false imprisonment with a dangerous weapon and armed robbery. Specifically, Williams maintains that there was no physical evidence linking him to the crimes and that Johnson, the only eyewitness who testified, and Deputy Morris were not credible. Green maintains that the State did not provide proof of his identity as a participant in the crimes, or proof that he took anything of value from the victims. We disagree.

Elements of the Crime

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 1995-1377 (La.02/28/96), 668 So.2d 1132; State v. Henson, 38,820 (La.App.2d Cir.09/22/04), 882 So.2d 670. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Henson, supra. A previewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508, writ denied, 2002-3090 (La.11/14/03), 858 So.2d 422.
Additionally, a person may be guilty of a crime by being a principal to such crime. Louisiana R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
*1134 Not all principals are automatically guilty of the same grade of offense; an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Holmes, 388 So.2d 722 (La.1980); State v. Smith, 2007-2028 (La.10/20/09), 23 So.3d 291.
To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from the person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, 35,189 (La.App.2d Cir.10/31/01) 799 So.2d 684. To convict a defendant of false imprisonment with a dangerous weapon, the state is required to prove that the defendant intentionally confined or detained another while armed with a dangerous weapon. La. R.S. 14:46.1.
Here, the evidence was sufficient to convict both Williams and Green of the crimes of armed robbery and false imprisonment ■with a dangerous weapon. It is apparent that the jury found Johnson and the officers who |fiwere on the scene to be credible, and it is not within the discretion of this court to re-assess that determination. Williams was armed with a handgun when he and Green broke down the door to Norris’ home. As Johnson explained, Williams took her firearm from her before both Williams and Green ransacked the bedroom looking for valuable property while Maynor held the women at gunpoint. There was ample evidence to convict both Williams and Green of the crimes of armed robbery and false imprisonment with a dangerous weapon through either their direct commission or through their active participation as principals.

Identity

Beyond proving the elements of the offense, it is necessary to prove the identity of the defendant as the person who committed the crime. State v. Hughes, 2005-0992 (La.11/29/06), 943 So.2d 1047. Positive identification by only one witness may be sufficient to support a defendant’s conviction. State v. Youngblood, 41, 976 (La.App.2d Cir.05/09/07), 957 So.2d 305, writ denied, 2007-1226 (La.12/14/07), 970 So.2d 530; State v. Davis, 27,961 (La.App.2d Cir.04/08/96), 672 So.2d 428, writ denied, 1997-0383 (La.10/31/97), 703 So.2d 12. In cases involving a defendant’s claim that he was not the person who committed the crime, the state must negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.04/12/96) 677 So.2d 1008, writ denied, 1996-1807 (La.02/21/97) 688 So.2d 520.
In the case sub judice, ample evidence was presented to show that Williams and Green were indeed the individuals who committed the crimes |fifor which they were convicted. Johnson positively identified all defendants as the perpetrators that night, after having time to view the perpetrators’ faces as she was held at gunpoint in the home. Notably, none of the perpetrators was wearing masks or concealing their identities. Caldwell Parish Sheriff Steven May himself also saw and recognized Williams in the home before all three defendants were caught fleeing from the home.
The record contains sufficient evidence to support the defendants’ convictions in this case. When the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes of armed robbery and false imprisonment with a dangerous weapon beyond a reasonable doubt. Thus, these assignments of error are without merit.

*1135
Double Jeopardy

In the next assignment of error Williams, Green, and Maynor assert that they were subjected to double jeopardy when they were each convicted of both the offense of armed robbery and false imprisonment with a dangerous weapon based on the same course of conduct. We agree.
A person cannot twice be put in jeopardy for the same offense. U.S. Const, amend. V; La. Const. Art. 1 § 15; La. C. Cr. P. art. 591; State v. Knowles, 392 So.2d 651 (La.1980). Louisiana uses both the “Blockburger test” and the “same evidence test” in determining whether double jeopardy exists. State v. Ceasar, 37,770 (La.App.2d Cir.10/09/03), 856 So.2d 236. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be ^applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. Louisiana also uses the broader “same evidence” test which dictates that:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy and a defendant can be placed in jeopardy for only one.
State v. Steele, 387 So.2d 1175 (La.1980); State v. Robertson, 511 So.2d 1237 (La.App. 2d Cir.1987), writ denied, 516 So.2d 366 (La.1988).
If double jeopardy is found, the proper remedy is a vacation of the conviction and sentence for the lesser-punishable offense. State v. Price, 39,582 (La.App.2d Cir.03/23/05), 899 So.2d 633.
While Louisiana courts have examined the double jeopardy issue regarding other combinations of crimes with armed robbery, it seems the combination of armed robbery and false imprisonment with a dangerous weapon has not been so examined for a double jeopardy violation. See State v. Rabun, 38,655 (La.App.2d Cir.08/18/04), 880 So.2d 184 (convictions for armed robbery and conspiracy to commit armed robbery violated double jeopardy); State v. Robertson, 386 So.2d 906 (La.1980) (convictions for first degree murder and armed robbery when armed robbery was the underlying offense violated double jeopardy); State v. Joseph, 2005-186 (La.App. 3d Cir.11/02/05), 916 So.2d 378 (convictions for armed robbery and aggravated burglary violated double jeopardy).
|sAs already noted herein, the elements of armed robbery are (1) a taking, (2) of anything of value, (3) from the person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. False imprisonment while armed with a dangerous weapon is the unlawful intentional confinement or detention of another while the offender is armed with a dangerous weapon. Although no Louisiana court has considered these two crimes together, we conclude that under the Blockburger test, these are clearly two separate offenses. Armed robbery requires proof of a taking, which false imprisonment with a dangerous weapon does not. Conversely, false imprisonment requires proof of “confinement or detention” not required to prove armed robbery.
The same evidence test, however, is a broader test that assesses the evidence required to convict a defendant of each crime. In the case sub judice when the defendants are charged with both armed robbery and false imprisonment while armed with a dangerous weapon, the same evidence was indeed used to convict them of both crimes. In this case, using the *1136 principles of double jeopardy and applying them to the specific facts of this case we find that the evidence required to support the conviction of false imprisonment while armed with a dangerous weapon would also have supported the conviction for armed robbery. Thus, under the “same evidence” test, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. When the defendants entered Norris’ home armed with a dangerous weapon and forced Johnson to remain at gunpoint while they ransacked the home after 19taking her weapon from her person, the defendants simultaneously committed the acts which could have supported a conviction for either offense. In presenting the facts to prove one offense, the state simultaneously proved the other. Therefore, since the same evidence will support a conviction for either offense, the defendants cannot be put in jeopardy for the two separate offenses.
Because false imprisonment with a dangerous weapon is a lesser offense as compared to armed robbery, the convictions of each defendant for false imprisonment •with a dangerous weapon are hereby reversed.

Batson Challenge

In this assignment of error defendants Green and Maynor allege that the trial court erred in allowing the state to exercise a peremptory challenge against potential juror Angela Tatum, after having already sustained the defense’s Batson objection to the state’s prior peremptory challenge of the same juror.[1]
It is well settled that the' use of peremptory challenges based solely on a juror’s race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, 54 USLW 4425 (1986). The Batson decision is codified in our law in La. C. Cr. P. art. 795. State v. Bess, 45,358 (La.App.2d Cir.8/11/10), 47 So.3d 524. Striking a single juror can constitute an equal protection violation. State v. Collier, 553 So.2d 815, 819 (La.1989). In State v. Draughn, 2005-1825 (La.01/17/07), 950 So.2d 583, cert. denied, 522 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007), the court explained the review of a Batson claim:
A defendant’s Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, “[t]he second step of this process does not demand an explanation that is persuasive, or even plausible”; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating “the persuasiveness of the justification” proffered by the prosecutor, but “the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.” (Citations omitted.)
The trial court plays a unique role in the dynamics of a voir dire, for it is the *1137 court that observes firsthand the demean- or of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. Bess, supra, citing State v. Myers, 1999-1803 (La.04/11/00), 761 So.2d 498. A reviewing court owes the district judge’s evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson, supra; Bess, supra.
When the prosecution exercised a peremptory strike against Tatum, Williams and Green both raised a Batson challenge to the strike. The trial court then required the prosecutor to provide a race-neutral reason for the challenge. He responded:
|1TI watched her body language. And I watched her, I was watching her, specifically, when [Williams’ attorney] was talking about black defendants. He uses something that I particularly wouldn’t use myself in voir dire when he says, “All defendants that are on trial on television are black. They’re all black.” And she’s sitting there like this (nods yes). And that really struck me. First of all, I didn’t care for it when he asked the other panel. Because that’s not true. I didn’t watch a lot of television, but I think there are a lot of other people that are on trial. But she agreed with that. And that gave us the impression that she’s agreeing that ... here we’ve got some more black people on trial. She’s the only black person that we’ve even moved to strike. And we have stricken other people. And guarantee you the people that we’ve moved to preempt [sic] on this particular panel were other white people. And they couldn’t tell me why we struck them, because they liked them.
The defense attorneys then noted that “all the rest of the white jurors” nodded their heads at the “black defendants on television” example as well. The court responded:
In reviewing the questions, in all candor, I did not hear anything that would cause, that indicated that the State had reasons to remove her. I’m going to grant the motion and put her back on the jury.
The following day after the next panel of jurors was questioned, the parties were given the opportunity to exercise strike backs. The prosecution again exercised a peremptory challenge against Tatum. He argued:
Yesterday, and to be quite frank with Your Honor, some of what I’m about to tell the Court, I was a little surprised by what happened, because we didn’t feel that they had met the prima facie case of racial discrimination in this case to put the burden or shift the burden to us under the law, but we did have to make a statement, and we did, and the Court didn’t find it sufficient. However, a remark was made during [Mr. Williams’ attorney’s] voir dire that, you know, he represented her. And then he moved over there in his fashion and said, and ... “Mister, Mr. McKee was on the other side, wasn’t he?” She said, “No. Huh-uh.” Everything, and that’s what I said yesterday, everything he said, she was sitting there nodding or agreeing with. And, we’d submit a copy of the lawsuit that was filed in |12that case. She was the person that Mr. McKee [the district attorney] sued. Now, if that’s not against her, I don’t know what it would be.
And [Mr. Williams’ attorney] knew that. He may say, well, it settled, and every *1138 thing else. But the point is, it doesn’t matter whether it settled before it actually went to trial, he was directly suing that lady that was sitting there.
Another thing is, our office has check charges against this lady. She’s set for ... trial in August. And one of those checks is for $21.07, the other check is for $245.00, which could be a felony. [The D.A.’s office is going to treat the charges as misdemeanors.] It doesn’t disqualify her because she’s not under indictment for a felony. But we do have active, pending cases against her. And we’re prosecuting her for something. And we do not feel that that lady can sit here and be impartial in this case knowing that the very people that are trying to convince her that somebody else did something, and she’s gonna vote ... guilty. Our position is that we have these open, pending cases, and they’ve been in existence for awhile, and we should be allowed to preempt [sic] her. We’re not challenging her for cause.
The district attorney then told the court that he did not believe the defendants had made a prima facie showing of racial discrimination and that race was not the reason for the challenge to Tatum. Defense counsel responded that his recollection of the lawsuit at issue was that the district attorney “wasn’t going after her” and that the matter had settled, and that the prosecutor could have, but did not raise those issues in the previous challenge. The trial court then stated:
The Court took the position yesterday that, based on the question that I heard, I heard no question elicited that caused me a great amount of concern. I took, and because this is a racial issue has been raised, the Court was listening for some race-neutral reason. Yesterday, I heard none. Today ... I hear a different reason. What I heard from this lady yesterday, and I took the position, or assumed from [Mr. Williams’ attorney’s] question, that they were almost co-counsel. I did not, in any way, assume that she was a ... being sued by Mr. McKee or, it may have been a direct action. I understand how these things go. But that’s not how I took it. I think they have a right to a fair trial. And I think a Batson challenge can be denied, and it | ^doesn’t have to rise to the standard of cause. I think they have to show a reasonable reason to use a preempt [sic], based on something other than race.
I think, even more than the statement made about [District Attorney] Mark [McKee] being adverse to her, I think the fact that there are charges pending against her by the D.A.’s office, to me, would be sufficient to justify a preempt [sic]. And I don’t see anything wrong, I realize they didn’t meet that challenge yesterday, but I don’t see anything wrong with them raising that anew. And I’m gonna grant the backstrike.
In a criminal case, the fact that a potential juror is facing criminal charges brought by the district attorney’s office that is also prosecuting the defendant is a race-neutral reason for the exercise of a peremptory challenge. Likewise, prior litigation where the district attorney was adverse to the potential juror is a race-neutral reason for the exercise of a peremptory challenge.
We find no error in the trial court originally reseating Tatum after a finding that there were no race-neutral reasons for the first challenge. Additionally, we find no error in the trial court hearing grounds for a second peremptory challenge and finding that the prosecution had valid race-neutral reasons for dismissing Tatum. Accordingly, we find no merit in this assignment of error.

*1139
Denial of Motions for Mistrials

Defendants claim the trial court erred in denying two motions for mistrial regarding two separate circumstances,[2] as well as a third circumstance where no motion for a mistrial was asserted. We disagree.
| uCertain events require the trial court to grant a mistrial upon motion of the defendant: if the judge, district attorney, or court official makes an irrelevant and prejudicial remark about race, the defendant’s failure to testify, or the judge’s refusal to direct a verdict; or, if inadmissible other crimes evidence is adduced. La. C. Cr. P. art. 770. When a remark is made that does not fall under art. 770, a mistrial is not mandated. Instead, the court must admonish the jury, if this is requested, and only grant a mistrial if, within the court’s discretion, the admonishment is not sufficient to assure a fair trial. La. C. Cr. P. art. 771. A trial court’s ruling denying a mistrial will not be set aside absent an abuse of discretion. State v. Narcisse, 426 So.2d 118 (La.1988), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
A mistrial must also be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. La. C. Cr. P. art. 775. The court explained in State v. Adams, 30,815, (La.App.2d Cir.06/24/98), 715 So.2d 118, writ denied, 1998-2031 (La.03/19/99), 739 So.2d 774:
Mistrial is a drastic remedy and proper only when misconduct deprives the defendant of any reasonable expectation of a fair trial. Whether prejudice has resulted lies in the sound discretion of the District Court.
In a criminal case, any private communication, contact or tampering directly or indirectly with a juror during a trial about a matter pending before the jury is deemed presumptively prejudicial. However, not every contact between a juror and a witness will result in mistrial; prejudice must be established. (Citations omitted.)
h fMotion for Mistrial Because of Statement
The first motion for a mistrial was made after the state referenced, in the presence of the jury, that defense counsel had argued something outside of the jury’s presence. During direct examination by the state of a witness, the following occurred:
Mr. Cook: Now, when you talked to Betty, did uh, tell the Jury whether or not she related to you that she was concerned about this call—
Mr. Champagne: Objection, Your Hon- or, I think he’s testifying, I think he’s leading and testifying, he’s been doing it now for the last couple of minutes, now, and I let it go. I object.
Mr. Cook: Your Honor, they’re the ones that argued outside the presence of the Jury that all this was his investigation—
Mr. Champagne: I object to that, Your Honor.
Ms. Domangue: Move for mistrial.
The Court: No, no, no — I’m gonna overrule the objection, you may proceed.
Mr. Cook (continuing): You talked to Betty and Betty got two phone calls—
Mr. Champagne: Your Honor, I move for mistrial at this point.
*1140 The motion for mistrial was later denied and the jury was admonished regarding that statement:
The Court: The Jury’s back. Y’all may be seated. I’ll advise the Jury, you are to disregard any comments or uh, about any conversations or discussions that might take place outside your presence. You may proceed.
Williams and Maynor appeal this denial of the motion for mistrial claiming the comment prejudiced their cases. We disagree.
| )fiIn this case, the remark complained of does not satisfy the requirements for a mandatory mistrial under La. C. Cr. P. art. 770 as the statement did not relate to race, failure to testify, refusal to direct a verdict, or other crimes. The trial court properly found that defendant’s remedy was under art. 771 and administered an admonishment to the jury. Further, the trial court made the jury aware several times prior to this incident that in the normal course of a trial some things will be discussed outside their presence, and that those things should be ignored. We see no reason why these admonishments would not have been sufficient to ensure a fair trial. Therefore, we find no abuse of the trial court’s discretion in its denial of defendants’ motions for mistrial. Accordingly, we find this assignment of error to be without merit.

Motion for Mistrial Because of Juror Intimidation

The second motion for a mistrial was made after an incident when Maynor’s brother made a threatening comment to two jurors outside the court. The morning of the first day of trial, two jurors, William Hoof and Edward Hooter, were outside the courthouse awaiting the trial to begin. Hoof noticed a group of people, who appeared to him to be Maynor’s family, near them. Hoof told Hooter this observation. Subsequently, Maynor’s brother approached the jurors and asked them to tell him what they said. The jurors told him they were not talking about them. When it came time to enter the courthouse the jurors walked past Maynor’s brother. Hoof heard Maynor’s brother say, as they passed him, ‘You better get your shit straight, old man, or I’ll take care of you.” Hoof further stated |)7Maynor’s brother began making faces at him in the courtroom throughout the trial after this incident. Hooter did not testify to hearing Maynor’s brother make any comment as the jurors walked by or to seeing anyone make faces at him throughout the trial. Hoof reported the incident to the bailiff later that day. The trial court called both jurors in to discuss the incident, questioning them about how this affected them and their responsibilities as jurors. Both men stated they did not feel threatened nor did they think they were targeted as jurors. The trial court then excluded Maynor’s brother from the courtroom for the remainder of the trial. At this time, defense counsel moved for a mistrial on the basis that this interaction was prejudicial to the defendants’ cases. The trial court denied the motion stating that the jurors indicated this interaction would not affect their service on the jury. In an unrelated matter, Hoof was removed from the jury for an injury to his ankle and was replaced by the alternate juror. Therefore, Hooter was the only questionable juror who deliberated. Williams, Green, and Maynor appeal this denial claiming the trial court erred in not granting it. We disagree.
In this case, the trial court conducted a careful inquiry into the incident, heard from both jurors, and determined that the jurors were not even certain whether the man who made the comments was a relative of a defendant or not. Additionally, neither juror felt intimidated and neither juror felt this incident would affect his *1141 service on the jury. Also, Hoof was the only juror who heard the statement that Maynor’s brother would “take care of [him]” and Hoof was subsequently taken off the jury for unrelated | ^reasons. Further, even if Hooter was compromised in some way, the jury was unanimous in its decision; therefore, Hooter’s vote could have gone either way without altering the final outcome of the trial. We see no abuse of the trial court’s discretion in its denial of defendants’ motions for mistrial. Accordingly, we find this assignment of error to be without merit.

Closing Argument

Maynor asserts that a statement made by the prosecution during closing arguments, regarding charges related to the unavailable victim Anders, was prejudicial; however, neither an objection nor a motion for mistrial was made in response to this statement. As such, the error was not preserved for appellate review by a contemporaneous objection as required by La. C. Cr. P. art. 841 and it will not be addressed. State v. Owens, 32,640 (La.App.2d Cir.10/27/99), 763 So.2d 628, writ denied, 2000-0010, (La.06/16/00), 764 So.2d 963.

Consolidation

In this assignment of error May-nor claims the prosecution did not follow proper procedure in consolidating the cases against the defendants for trial and in severing the charges involving the unavailable victim, Bobbie Jo Anders, from the trial as well. Maynor contends the defendants are the proper parties to move for consolidation of a trial, not the court or the prosecution. And since the prosecution procured separate trials in this case, she claims a new trial should be ordered on these grounds. We disagree.
|, 9When more than one defendant is charged in separate bills of information the proper procedure for consolidating the trials is through motion of the defendant(s). La. C. Cr. P. art. 706. If the state chooses to consolidate the trials, they may do so by dismissing all charges and recharging in a consolidated form. Official Comment (b) to art. 706. Despite this rule, the Louisiana Supreme Court has held that once a verdict has been rendered in cases where this proper procedure was not followed, the defendant must show prejudice to establish the consolidation affected his substantial rights. State v. Crochet, 2005-0123 (La.06/23/06), 931 So.2d 1083.
In the case sub judice, defendants did not object to the consolidation in the trial court, with the exception of Green’s motion to sever which he later withdrew. Therefore, it appears Maynor did not object to the consolidation in the trial court, and thereby did not preserve this issue for appeal. Assuming arguendo that Maynor has a right to complain about this error on appeal despite the lack of objection, there exists no evidence of prejudice. The proof of the defendants’ identities was essentially conclusive as they were caught fleeing from the scene. The facts of the case were simple enough to allow a jury to separate each defendant’s participation without difficulty. There is no evidence Maynor was prejudiced by the decision to consolidate the trials of the defendants, or the decision to sever the charges relating to Anders. This assignment of error is without merit.
| ¾0Confrontation Clause
Williams argues in his pro se capacity that the trial court erred in allowing Detective Tony Childress of the Caldwell Parish Sheriff’s Office to testify about what he learned from Julia Gill, who did not testify in this case. No objection, however, was raised to that testimony at trial; therefore, according to La. C. Cr. P. art. 841(A) this issue may not be heard on *1142 appeal. Further, allowing this testimony appears to have been a part of the defense strategy, as defense counsel later described the testimony as exculpatory. This assignment of error is without merit.

Excessive Sentence

Defendants Williams and Maynor each challenge their sentences as excessive. When a defendant’s motion for reconsideration alleges generally that the sentence is excessive, under State v. Mims, 619 So.2d 1059 (La.1998), writ denied, 634 So.2d 373 (La.02/11/94), he is “simply relegated to having the appellate court consider the bare claim of excessiveness.” This bare claim preserves only a claim of constitutional excessiveness. Mims, supra; State v. Lofton, 41,423 (La.App.2d Cir.9/27/06), 940 So.2d 702, writ denied, 2006-2952 (La.9/28/07), 964 So.2d 359. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. Livingston, 39,390 (La.App.2d Cir.04/06/05), 899 So.2d 733.
However, there is a two-pronged inquiry for appellate review of sentences for excessiveness when there is a substantive motion to |⅞1 reconsider. First, the record must show that the sentencing court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 1994-0461 (La.09/05/95), 660 So.2d 819; State v. Linnear, 44,830 (La.App.2d Cir.12/09/09), 26 So.3d 303. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato, supra; State v. Linnear, supra. No sentencing factor is accorded greater weight by statute than any other sentencing factor. State v. Taves, 2003-0518 (La.12/03/03), 861 So.2d 144; State v. Linnear, supra. The second prong is the constitutional ex-cessiveness standard, discussed above.
Williams makes a general claim of exces-siveness of sentence; therefore, his issue will be reviewed using the broader constitutional excessiveness standard. His 60-year sentence for armed robbery, and his consecutive 10-year sentence for false imprisonment, are hardly “grossly disproportionate” or “shocking.” He was the leader of the group of robbers and he was the only person who brought a firearm into the victim’s home. He is the person who kicked down the door and he is the one who forcibly disarmed Johnson. He is a third felony offender who was not charged as such. If he had been so charged, he would face a life sentence.
For Maynor, whose motion to reconsider sentence alleged that the trial court did not take into account the relevant mitigating factors, the inquiry is the broader two-step analysis. Her sentence is likewise | ^appropriate. The record reflects that the trial court took her age and family status into account in imposing the sentence, and, subsequently, the trial court chose to run her robbery and false imprisonment sentences concurrently rather than consecutively. However, the record fully supports the trial court’s conclusion that, were it not for the swift response of the CPSO, one or more of the victims were at great risk of death. Maynor had identified herself to Johnson, none of the robbers wore masks, Maynor repeatedly threatened to blow off the victims’ heads, and the defendants severed the phone lines to the victims’ home before entering. It is apparent the defendants had little regard for the lives of the victims, and this is reflected in the sentences.
*1143 Because we have reversed the respective convictions for false imprisonment, those portions of the defendants’ sentences are reversed as well. Otherwise, we deem defendants’ sentences for their armed robbery convictions to be reasonable and appropriate. These assignments of error are without merit.
Conclusion
For the foregoing reasons, the convictions of Andre T. Williams, Brushun D. Green, and Catrenia N. Maynor are reversed in part and affirmed in part, as amended.
REVERSED IN PART, AFFIRMED IN PART, AS AMENDED.

. It is important to note in this case where three defendants were tried together that pursuant to La. C. Cr. P. art. 842, "If an objection has been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all the defendants."

. There were no objections made to the denials of the motions for mistrial. While it is questionable under La. C. Cr. P. art. 841 whether such objections are necessary to preserve the issues for appeal, out of an abundance of caution we have chosen to address these assignments of error.